MARTHA D. KNOWLES, *et al. vs.* EDWIN KNOWLES, JR., *et al.*

MARCH 11, 1912.

PRESENT: Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

(1) *Equity. Laches.*

A suit in equity to compel the conveyance of property, which is brought within the period of limitation is diligently brought, and the defence of laches is not open.

(2) *Concurrent Remedy. Equity.*

Where complainants had attempted to maintain an action at law against respondents upon a covenant for the reconveyance of property, and were denied relief, they are not thereby estopped from proceeding in equity for the relief sought.

No remedy is not equivalent to a concurrent remedy.

*(3)   Equity.*

On bill brought to compel conveyance of property, evidence considered and complainants held entitled to relief sought.

BILL IN EQUITY.   Heard on appeal from decree of Superior Court and decree affirmed.

DUBOIS, C. J.   This is a bill in equity, brought by Martha D. Knowles and her son, John C. Knowles, Jr., who are the widow and son, respectively, and also devisees under the will of John C. Knowles, Sr., deceased, against Edwin Knowles, Jr., and his sister, Elizabeth Marvel, children and heirs at law of Edwin Knowles, Sr., deceased intestate, for the purpose of compelling them to convey to the complainants a certain burial lot in Swan Point Cemetery which they have inherited from their father, Edwin Knowles, Sr., and which had been conveyed to him by said John C. Knowles, Sr., July 18, 1889, as security for his endorsement of said John C. Knowles, Sr.'s note.

The complainants' claim is that after the death of said John C. Knowles, Sr., said Martha D. Knowles, as executrix of the will of her said husband, in May, 1896, paid all of his indebtedness due to Edwin Knowles, Sr., and received from him certain mortgages and notes, and asked him for the deed of the Swan Point lot, in question, which he then said he had mislaid and could not find, but he also said that it was all right, it had never been recorded and that he would look it up, that the indebtedness for which the burial lot had been security had been so paid by her, and believing that the record title to the lot would remain in her said husband and his heirs and assigns because said deed had not been recorded, and having no apprehension that, if said deed should be found by said Edwin Knowles, Sr., he would record it in violation of his promise to her, and contrary to his agreement with her husband, she did nothing further in the premises.   During the lifetime of said Edwin Knowles, Sr., said deed was never recorded and whether he discovered its whereabouts after his statement to the complainant that

he had mislaid it does not appear.   He died March 22d, 1900, intestate, and on April 6, 1900, the respondent Edwin Knowles, Jr., was appointed his administrator, and among the papers of his father found the deed, note and a copy of a contemporaneous agreement which reads as follows:  "Received of John C. Knowles a transfer of the South East End of Group 117 in Swan Point Cemetery containing about 2000 feet as collateral security for the endorsement of his note dated April 20, 1889, for the sum of sixteen hundred dollars.   Now therefore if said note is paid or any renewals of the same saving me harmless from all cost or damage by reason of said endorsement then I agree to retransfer said land as afore-described on demand.   Providence, July 18, 1889.   Witness my hand and seal, Edwin Knowles.   In presence of Louis J. Doyle."   The respondent said nothing to the complainant, Mrs. Knowles, about finding the papers nor did he record the deed until after having had a conversation with her about it in April, 1902, a date nearly thirteen years after the delivery of the deed as security.   In this conversation she told him that she was about to give a part of the lot to the corporation in exchange for the perpetual care of the rest.   He then said that his father had a deed of the lot.   She then informed him that she had paid all the indebtedness of her husband to his father and of the conversation had with his father relating to the deed at the time of such payment, but the respondent saw fit to disbelieve her version of the affair and forthwith had the deed recorded in the records of the cemetery.   At the time she made the settlement with Edwin Knowles, Sr., there were no other persons present, so there is no one living who can contradict her as to what was said and done at that time.   If her story is true the complainants are entitled to the relief prayed for unless they have barred themselves from this remedy by electing to pursue some other concurrent one or unless thay have forfeited their claim to relief by laches. We have recently had occasion to consider the question of laches in the case of *Hassett* v. *Everson*, 33 R. I. 400 and

approve the doctrine laid down in *Groesbeck* v. *Seeley*, 13 Mich. 329, although the same relates merely to the case of the true owner of land against a tax purchaser. Therein the (1) court said of the true owner: "But if he becomes ousted, whether by a pretended tax title holder or by any adverse claimant, he can only secure the enjoyment of his rights by active measures, and the party in possession may then rely on such possession until it is lawfully assailed by suit or otherwise within the period of limitation." In other words, suits that are brought within the period of limitation fixed by the statutes are diligently brought. It is not claimed that this proceeding was not so instituted and therefore this defence is not open to the respondents. Nor is there any validity in the claim that is made in their answer: that the complainants have elected to treat said property as the property of the (2) respondents under said deed and to sue said respondents for breach of the covenant made by their father with the father of the complainants, and that thereby they are estopped from bringing this bill of complaint for the relief sought. It is true that the complainants did bring such a suit as appears in the case of *Knowles* v. *Knowles*, 26 R. I. 534. In that case the court held, on demurrer to the declaration, "The defendants, when sued in a court of common law, may well say: we have no covenant, and our ancestor made none for us; the agreement sued upon is not our deed." In other words, the defendants in that case, who are the respondents in this, satisfied the court that no such remedy was open to the plaintiffs there who are the complainants here. No remedy is not equivalent to a concurrent remedy. See *Whipple* v. *Stevens*, 25 R. I. 563. The complainants attempted to assert a right which the court found they did not have, but the court also made the following suggestion: "If, in view of a court of equity, the transaction between the parties constituted a mortgage, if John C. Knowles retained the equity of redemption which as an equitable estate was devised to the plaintiffs, if after the payment of the debt Edwin Knowles held the legal title upon the naked trust to

convey it to the plaintiffs on demand, and if the defendants inherited the bare legal title subject to the same trust, these considerations are not available in a court of common law and furnish no foundation for this action."

(3)   The complainants acting under this suggestion brought this proceeding and in our opinion are properly here for a determination of their rights in the premises. The issue is a very narrow one and resolves itself into a simple question of fact which we have already stated. Is the testimony of Martha D. Knowles to be believed concerning the interview and conversation had with Edwin Knowles, Sr., at the time she paid him the amount due him from the estate of her late husband, John C. Knowles, Sr., to wit: that she asked him for the deed of the Swan Point lot, he said he had mislaid it, and could not find it but it was all right, it had never been recorded and he would look it up some other time? If it is it is determinative of the case. The case was referred to a master and he filed his report in favor of the complainants. The respondents took exception to said report and the case was heard by a justice of the Superior Court upon the respondents' exceptions and upon certain issues of fact, and the court found for the complainants and entered a final decree from which the respondents appealed, which appeal is the subject of this consideration. Martha D. Knowles, the complainant, was a witness before the master and also before the court, she was examined and cross-examined in the presence of each of them and they who saw her and heard her story, who had every opportunity of scrutinizing her with the utmost care have decided in favor of the credibility of her story. We see nothing in the transcript to lead us to a different conclusion.

The decree appealed from is therefore affirmed and the cause is remanded to the Superior Court for further proceedings.

*Irving Champlin, James Harris,* for complainants.
*Lewis A. Waterman, Ernest P. B. Atwood,* for respondents.